United States District Court
Southern District of Texas
FILED

NOV 2 8 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| YOLANDA RAYNER | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B00-145 |
| | § | (636 (c)) |
| UNITED STATES OF AMERICA | § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, YOLANDA RAYNER, Plaintiff in the above styled and numbered cause and pursuant to Federal Rule of Civil Procedure 56, files this her Motion for Partial Summary Judgment and as grounds therefore would show the Court the following:

I.

### FACTUAL BACKGROUND

This lawsuit arises out of an automobile - pedalcyclist collision which occured on January 15, 2001. U.S. Border Patrol Agent Shawn David Henderson, while operating a 1984 Chevy Pick up truck, owned by the United States Government, struck Plaintiff Yolanda Rayner while she was riding her bicycle on the shoulder of highway 281.

As a result of the collision, Plaintiff sustained severe physical injuries and mental anguish. Specifically, Plaintiff sustained injuries to her spleen which necessitated its removal from her body, a lacerated liver, a broken wrist and various other serious injuries including lacerations and bruising as a result of the incident in question.

It is undisputed that during the incident in question, Defendant Shawn David Henderson was acting within the course and scope of employment with the United States Border Patrol and the United States Immigration and Naturalization Service.

On or about May 5, 2000, Plaintiff YOLANDA RAYNER presented her "CLAIM FOR DAMAGE, INJURY, OR DEATH" to the United States Border Patrol, a division of the Immigration and Naturalization Service, and the employer of Shawn David Henderson. On or about June 12, 2000, Defendant agencies denied Plaintiff's claim. Subsequently, Plaintiff filed the instant lawsuit.

II.

## ARGUMENT AND AUTHORITIES

In its answer to Plaintiff's lawsuit, Defendant United States of America contends that Plaintiff's injuries were caused by her own negligence. Specifically, Defendant argues that Plaintiff Yolanda Rayner was negligent since she was riding her bicycle against oncoming traffic when the incident made the basis of this lawsuit occurred: "The United States will show that the Plaintiff was riding her bicycle against traffic (i.e. the left curb or edge of the roadway); Texas law requires Plaintiff to ride her bicycle as near as practicable to the right curb or edge of the roadway ... . Tex. Transp. Code. Ann. § 555.103 (Vernon 1999)." See Section 5, Defendant's Contentions in the Joint Pretrial Order on file with the court and incorporated by reference herein for all purposes.

Plaintiff would show that Plaintiff Yolanda Rayner's act of riding her bicycle against oncoming traffic before the incident in question does not constitute contributory negligence. Rather, Plaintiff's actions on the day of the incident in question were excused, justified and not a violation of the law. Therefore, Plaintiff Yolanda Rayner is not contributory negligent with respect to her riding against oncoming traffic.

The Supreme Court of Texas has long held that when compliance with the law would involve a greater risk of harm to the actor or others, it constitutes an excused violation of a legislative enactment and is not negligence. See <u>Impson et. al. V. Structural Metal, Inc.</u>, 487 S.W.2d 694, 696 (Tex. 1972); <u>Murry v. O&A Express, Inc. et. al.</u>, 630 S.W.2d 633 (Tex. 1982).

In the <u>Impson</u> opinion, the Texas Supreme Court contemplated the situation which Plaintiff faced in the instant case. For example, the court noted that the Restatement of Torts Second addressed a scenario where the "greater risk of harm, is one in which the law requires people to walk facing traffic, but due to the particular circumstances, it would involve greater risk to walk upon that side." <u>Id</u> at 696. The Court continued to state that, "The above [is] intended merely as [an] illustration of a principle and [is] recognized to be dictum here. But we do approve of the general treatment of legally acceptable excuses as set out in the Restatement, Second." <u>Id</u>.

In <u>Borden v. Price</u>, the court encountered a situation where a driver and passenger of a vehicle decided to stop along the shoulder of the road to remove a cushion from the middle of the road. 939 S.W.2d 247, 252-253 (Tex App. Amarillo 1997, writ denied). The passenger, who got out of the vehicle and actually removed the cushion from the road, was struck by a vehicle passing by. <u>Id</u>. The Defendants in the lawsuit argued that the passenger was contributory negligent because the passenger violated traffic laws which prohibited walking across lanes of highway. <u>Id</u>. The court found that passenger's actions were excused and did not constitute negligence. <u>Id</u>.

In the instant case, Plaintiff Yolanda Rayner rode her bicycle against oncoming traffic because riding her bike with the flow of traffic would involve a greater risk of harm. See Pages 16 - 18 of Plaintiff Yolanda Rayner's Deposition Testimony attached hereto as Exhibit "A" and incorporated herein by reference for all purposes. Plaintiff had several near misses while riding her bike with the flow of traffic as cars would come very close to striking the back of her bicycle. Therefore, Plaintiff believed it to be more safe to ride against oncoming traffic so that she would be able to see what was directly approaching her.

Given the Texas Supreme Court's illustrations in <u>Impson</u> and in light of the <u>Borden</u> case's factual similarities with the instant case, this court should find that Plaintiff is not contributory

negligent with regard to Plaintiff riding her bicycle against oncoming traffic.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that this Court grant Plaintiff's Motion for Partial Summary Judgment and for all further relief, both general and special, at law and in equity to which Plaintiff may be justly entitled.

Respectfully submitted,
MAGALLANES, HINOJOSA & MANCIAS
1713 Boca Chica Blvd.
Brownsville, TX 78520
(956) 544-6571 - telephone
(956) 544-4290 - fax

By: _____
J. A. Magallanes
State Bar No.:12809500
Fed Id No.: 2258
Carlos Escobar
State Bar No. : 24025351
Federal Id No.: 25649

## CERTIFICATE OF SERVICE

I hereby certify that on this the 28th day of November, 2001, a true and foregoing copy of the forgoing document has been sent via hand delivery and/or facsimile to the following:

Via Fax (956) 548-2549

Nancy Masso
Assistant United States Attorney
600 E. Harrison St. #201
Brownsville, Texas 78520

_____
J. A. Magallanes
Carlos Escobar

# Exhibit "A"

```
                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF TEXAS
                    BROWNSVILLE DIVISION

YOLANDA RAYNER             *
                           *
VS.                        *       C.A. B-00-145
                           *
UNITED STATES OF AMERICA   *
```

**********************************************

ORAL DEPOSITION OF

YOLANDA RAYNER

NOVEMBER 16, 2001

**********************************************

ORAL DEPOSITION OF YOLANDA RAYNER, produced as a witness at the instance of the Government, and duly sworn, was taken in the above-styled and numbered cause on the 16th day of November, 2001, from 9:46 a.m. to 11:07 a.m., before DIANA LEAL WEIBEL, Certified Shorthand Reporter, in and for the State of Texas, reported by oral stenography, at the Law Offices of Magallanes, Hinojosa, & Mancias, 1713 Boca Chica, Brownsville, Texas, 78520, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

================================================================
HENNIGH-QUIN COURT REPORTERS
P.O. Box 3036, Edinburg, Texas  78540
(956) 383-8887 / Fax 380-2050
Toll Free 1-800-892-6305
================================================================

**CERTIFIED COPY**

**HENNIGH-QUIN COURT REPORTERS**
**CERTIFIED SHORTHAND REPORTERS**

2

A P P E A R A N C E S

FOR THE PLAINTIFF:

    Mr. Eddie Trevino
    Mr. Carlos Escobar
    Magallanes, Hinojosa & Mancias
    1713 Boca Chica
    Brownsville, Texas 78520
    PH: 956/544-6571

FOR THE GOVERNMENT:

    Ms. Nancy L. Masso, Assistant
    U.S. Attorney's Office
    600 East Harrison, Suite 201
    Brownsville, Texas 78520
    PH: 956/548-2554

ALSO PRESENT:

    Ms. Dona J.F. Justus
    Assistant District Counsel/Sector Counsel
    INS - McAllen Sector Headquarters
    2301 South Main
    McAllen, Texas  78503

COURT REPORTER:    DIANA LEAL WEIBEL, C.S.R., #4192

\* \* \* \* \* \*

I N D E X

|  | PAGE: | BEGIN TIME: |
|---|---|---|
| BY MS. MASSO .................. | 4 | 9:46 a.m. |

E X H I B I T S

| Number: | Description: | Page: |
|---|---|---|
| No. 1 | Copies of photos (2) | 19 |

REQUESTED DOCUMENTS/INFORMATION

| BEGIN PAGE/LINE: | REQUESTED BY: | SEE FORM PAGE |
|---|---|---|
| Page 10, Line 22 | Ms. Masso | 51 |

16

1  then? Or would you say that you were in real good shape?
2      A    So-so.
3      Q    So-so? When you said that you would ride that
4  strip, I think I called it a strip or a stretch of highway,
5  and you said three (3) to five (5) days a week, would you
6  ride about eight (8) miles three (3) to five (5) days a week?
7      A    No, ma'am.
8      Q    No? So would -- on average, how many miles a week
9  do you think you would be bicycling down that stretch?
10     A    Gee, I don't recall. I don't recall.
11     Q    But I take it that some of your trips on the
12 bicycle down that stretch of highway were short trips and
13 some of them were longer trips?
14     A    Yes, ma'am.
15     Q    Okay. And was it your habit to ride on part of the
16 highway, a particular part or a particular side of the
17 highway when you were riding your bicycle?
18     A    Please repeat.
19     Q    Was it your habit or your, you know -- was it your
20 habit to ride on any particular part of the highway or the
21 pavement when you were taking these bike rides?
22     A    No, ma'am.
23     Q    Did you --on the day of the accident, it's my
24 understanding that you were riding on the lane that you would
25 be going against the traffic, --

**HENNIGH-QUIN COURT REPORTERS**
**CERTIFIED SHORTHAND REPORTERS**

17

1   A   Yes, ma'am.
2   Q   -- is that right?
3   A   Yes, ma'am.
4   Q   And was there any particular reason why you were
5   riding against the traffic that day?
6   A   Yes, ma'am.  For safety reasons.
7   Q   And would it be safe for me to say or assume that
8   the other times that you would ride your bicycle down 281,
9   you would also ride against the traffic --
10  A   Please repeat.
11  Q   -- for safety reasons?  Did you always ride against
12  the traffic for safety reasons?
13  A   No, ma'am.  I had just started riding recent,
14  prior, like a couple of months before.
15  Q   You mean riding your bicycle or riding against the
16  traffic?
17  A   Riding against the traffic.
18  Q   And so about two (2) months before the accident is
19  about when you started riding against the traffic?
20  A   Yes, ma'am.
21  Q   On a regular basis?
22  A   Yes, ma'am.
23  Q   And why, what was the triggering event two (2)
24  months before that caused you to start riding against the
25  traffic?

```
                                                              18
```

1    A    Because when I was riding with traffic, I had a
2  couple of near misses, so I decided to switch.
3    Q    Did anybody tell you that you should ride against
4  the traffic?
5    A    No, ma'am.
6    Q    Were you aware that there is Texas law that says
7  that bicyclists are supposed to be riding with the traffic?
8    A    Please repeat.
9    Q    Were you aware that there is a law in Texas that
10  says that bicyclists should ride with the traffic?
11    A    I don't understand.
12    Q    Well, you know, for example, you drive a car;
13  right?
14    A    Yes, ma'am.
15    Q    And there are rules of the road when we drive a
16  car; correct?
17    A    Yes, ma'am.
18    Q    Like you can turn right on red, but only after you
19  come to a complete stop and look both ways; correct?
20    A    Yes, ma'am.
21    Q    Well, there are also rules of the road for
22  bicyclists.  Do you understand?
23    A    Yes, ma'am.
24    Q    And there is a law in the -- there is a law here in
25  the State of Texas that says that people riding bicycles,

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| YOLANDA RAYNER | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B00-145 |
| | § | (636 (c)) |
| UNITED STATES OF AMERICA | § | |

## ORDER SETTING HEARING

On this the _____ day of _____, 2001, came before the Court, and having been presented to the Court, the Court is of the opinion that said Plaintiff's Motion for Partial Summary Judgment be set for hearing. Said Motion should hereby be set for the _____ day of _____, 2001, at _____ _.m. in the in the United States District Court for the Southern District of Texas Brownsville Division.

SIGNED on this the _____ day of _____, 2001.

_____
JUDGE PRESIDING

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| YOLANDA RAYNER | § § | |
| v. | § § | CIVIL ACTION NO. B00-145 (636 (c)) |
| UNITED STATES OF AMERICA | § | |

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

On this the \_\_\_\_\_ day of _____, 2001, came on to be considered before the Court the PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT in the above entitled and numbered cause of action.

The Court after considering said Motion and it appearing to the Court that said Motion should be **GRANTED**;

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT in all things is **GRANTED**.

**SIGNED** on this the \_\_\_\_\_ day of _____, 2001.

_____
JUDGE PRESIDING